LEWIS EDWARD KLINE AND ELLA L. KLINE, APPEL-LANTS, v. W. SCOTT ROBINSON AND MARJORIE L. ROBINSON, RESPONDENTS.

No. 5146

May 25, 1967                    428 P.2d 190

*Jones, Wiener & Jones,* of Las Vegas, for Appellants.

*Jones & Holt* and *Galane & Wines,* of Las Vegas, for Respondents.

## OPINION

By the Court, COLLINS, J.:

This appeal is from an order of the trial court directing a verdict for respondents Robinson (plaintiffs below) under NRCP 50(a) and dismissing appellants' Kline (defendants and counterclaimants below) counterclaims under NRCP 41(b) and (c). We feel the orders to be in error, reverse and remand for further proceedings.

This is an action on a $22,600 promissory note. Respondents recovered a judgment against appellants for $17,866.84 and for "foreclosure" of a second deed of trust.[1] Appellants admitted the amount due under the note but affirmatively defended on the ground the entire sum was unpaid usurious interest. Appellants' counterclaims sought cancellation of deeds of trust and a chattel mortgage as security for a promissory note representing the unpaid balance of usurious interest, and recovery of $111,514.51 as usurious interest previously paid respondents, because they contend the transaction was a loan and not a sale.

In considering respondents' motion for a directed verdict under NRCP 50(a), the rule of Bliss v. DePrang, 81 Nev. 599, 407 P.2d 726 (1965), controls. The trial court must

---

[1]Subsequent to the trial of this matter the opinion in McMillan v. United Mortgage Co., 82 Nev. 117, 412 P.2d 604 (decided March 29, 1966), was handed down. The "one-action rule" now requires the holder of a note secured by trust deed to first exhaust the security before proceeding on the note. See also dictum, Paso Builders, Inc. v. Hebard, 83 Nev. 165, 426 P.2d 731 (1967); Sims v. Grubb, 75 Nev. 173, 336 P.2d 759 (1959).

view the evidence and all inferences most favorable to the party against whom made, and may not test the credibility of the witnesses nor weigh the evidence. If there is no question of fact remaining to be decided, the order directing the verdict is proper. We must apply the same test as the trial court.

Likewise, in considering the motions to dismiss Klines' counterclaims under NRCP 41(b) and (c), the rule of Schmidt v. Merriweather, 82 Nev. 372, 418 P.2d 991 (1966), controls. The same test of the evidence and inferences must be applied by the trial court and this court as in the case of a directed verdict.

Our review of the record summarizes evidence and inferences favorable to the Klines. In 1963 they bought real property for $135,000 in Las Vegas for purposes of investment and improvement, intending to build a shopping center. They paid down $40,000, assumed a pre-existing deed of trust in the amount of $42,000, and gave a new deed of trust for $53,000. Klines approached Robinsons for a construction loan of $235,000. Robinsons agreed to a loan of only $165,000 when the $42,000 pre-existing deed of trust holder would not subordinate to the construction loan. Robinsons required the loan to be in the form of a sale of the property by Klines with the option to repurchase upon completion of construction, but in no event was the repurchase to occur before six months had elapsed. This was to allow Robinsons the long-term capital tax advantage under the federal tax law. Robinsons assumed the $53,000 purchase money deed of trust, but paid Klines no other money for the conveyance of the property. Klines additionally agreed to make the payments due under the $42,000 pre-existing trust deed, which they did to the extent of $2,925.81. Robinsons later paid the balance due of $39,074.19 on this secured debt without request of Klines or obligation under the contract.

To lend additional credence to their theory of sale, Robinsons required Klines to enter a five-year lease for the identical premises with monthly rental reserved. Terms of the lease required Robinsons, as lessors, to construct a shopping center at a cost not to exceed $165,000. Klines had the option to purchase the premises within three and not later than five years for $247,250. No rentals were ever demanded or paid under this lease. It was substantially, if not totally, disregarded by the parties.

Upon commencement of construction of the shopping center, Robinsons, as owners, caused to be prepared and recorded

a "Notice of Non-responsibility" to disclaim responsibility to suppliers of labor and materials under NRS 108.040.[2]

During construction of the shopping center the initially agreed advance of $165,000 by Robinsons proved inadequate, and subsequently they advanced an additional $25,000 and ultimately a total of $227,710 to complete the program. The advances beyond $190,000 were not the subject of further written contracts between the Robinsons and Klines.

Robinsons' total advancements to this project were $315,-765.75. This consisted of $227,710 in construction costs and $88,055.75 in satisfying the two purchase money deeds of trust.

When the shopping center was completed, Klines applied to and were granted by First Western Savings & Loan Company of Las Vegas a loan of $450,000. They received net from the loan $431,773, from which expenses of the escrow were deducted, leaving a balance of $422,547 available to them. Robinsons demanded $445,147.11 to resell the shopping center to Klines, which included a penalty of $200 per day or $2,000 for a ten-day closing delay following January 20, 1964. The Klines were short $22,600 in meeting the price demanded by Robinsons from the money received from First Western, and they gave Robinsons their note in that amount. Payments made on the note reduced the obligation to $17,866.84, the money judgment directed by the trial court in favor of Robinsons and from which this appeal is taken.

The transaction resulted in a profit to Robinsons of $129,-381.35 (difference between $445,147.11 and the sum of $227,710 and $88,055.75) for the period from July 16, 1963 to January 27, 1964, an elapsed time slightly in excess of six months. Robinsons apparently qualified under the long-term capital gain law in reselling the property to Klines after holding it in excess of six months (actually six months and eleven days).

Two areas of testimony by respondent W. Scott Robinson are particularly pertinent to the issue here. Testimony by him relating to the time within which he resold the shopping center to Klines is as follows:

"Q. And actually the property was purchased, reconveyed to Dr. Kline, approximately six months after you took title to the property? A. Whatever time First Western made him the loan. Q. That was approximately six months after you had

---

[2]But see Verdi Lumber Co. v. Bartlett, 40 Nev. 317, 161 P. 933, which holds an owner cannot escape liability for labor and materials by posting such a notice on his own property.

the property deeded? A. A little over six months. About seven months. Q. Was there any reason why it was done at that time that the property was reconveyed? A. I told him I would sell it back to him after six months so *they* could take capital gains."[3]

Testimony by him whether the transaction was one of loan or sale reveals as follows:

"Q. The questions were: Q. If I told you it was closer to four months afterwards, would that refresh your recollection? A. No, because I don't remember. Q. You don't remember? A. No, it was their idea, not mine, to get the loan paid off. Q. Now, do you remember those questions being asked and your giving those answers? A. Yes. Q. Now, Mr. Robinson —(interrupt) A. —to get the loan and pay me off; that was a slip of tongue right there is you want the correct answer. Q. What? A. That might have been a slip of tongue on my part right there."

The trial judge in concluding there was no disputed factual issues to be presented to the jury, ruled that the evidence clearly and convincingly disclosed a sale with right of repurchase, and not a loan. Hence there was no question of usury. In light of the evidence reviewed above, he was not entitled to withdraw from the jury's consideration the nature of the transaction, as either a loan or sale. The distinction between a sale and a loan has been succinctly defined in Milana v. Credit Discount Co., 163 P.2d 869 (Cal. 1945);

"A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form. [Citations]

"In a sale the delivery of the absolute property in a thing and the receipt of a price therefor consummate the transaction.

---

[3]It is extremely doubtful a buyer is entitled to a capital gain under federal tax law.

In a loan the initial transaction creates a debit and credit relationship which is not terminated until replacement of the sum borrowed with agreed interest." Whether a transaction in the form of a sale with option to repurchase is in fact a sale, or a loan disguised as a sale to cover up a scheme to collect usurious interest is an issue for the jury. Cannon v. Seattle Title Trust Co., 252 P. 699 (Wash. 1927); Rosemead Co. v. Shipley Company, 278 P. 1038 (Cal. 1929); Britz v. Kinsvater, 351 P.2d 986 (Ariz. 1960); Kawauchi v. Tabata, 413 P.2d 221 (Hawaii 1966).

There is a wealth of evidence in this case from which a jury might find there was a loan rather than sale, especially when instructed they can disregard form and look to the substance of the transaction and intent of the parties. Fiedler v. Darrin, 50 N.Y. 437 (1872), Annot., 154 A.L.R. 1065.

If the jury were to find Robinsons loaned Klines money to build the shopping center, they then must be properly instructed on the law of usury in Nevada. The Nevada usury statute, NRS 99.050,[4] while making an agreement to pay a greater rate of interest than therein allowed is void, has been construed in Hawthorne v. Walton, 72 Nev. 62, 294 P.2d 364 (1956), to preclude recovery of usurious interest voluntarily paid. This decision is not only contrary to the great weight of authority but is unique in American and English law. See Annot., 59 A.L.R.2d 519. We feel strongly that our usury statute should be construed to reflect the wiser and more just result of the well reasoned authorities. Therefore we specifically overrule the holding in Hawthorne.

The rule is, then, that usurious interest voluntarily paid may be recovered by the borrower because NRS 99.050 makes an agreement for a greater rate of interest null and void and of no effect as to such excessive rate of interest over that allowed by the statute. The reasoning behind this rule is well stated in Stock v. Meek, 221 P.2d 15, 20 (Cal. 1950), where Chief

---

[4]"Limitations on agreed interest rates.

"1. Parties may agree, for the payment of any rate of interest on money due, or to become due, on any contract, not exceeding, however, the rate of 12 percent per annum. Any judgment rendered on any such contract shall conform thereto, and shall bear the interest agreed upon by the parties, and which shall be specified in the judgment; but only the amount of the original claim or demand shall draw interest after judgment.

"2. Any agreement for a greater rate of interest than herein specified shall be null and void and of no effect as to such excessive rate of interest."

Justice Traynor said, "The theory of that law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them. Accordingly, 'voluntary' payments of interest do not waive the rights of the payors." A fortiori, usurious interest involuntarily paid is recoverable.

Finally, if the jury first found the transaction was a loan rather than a sale, it would then become a further question of fact for them to say whether Klines voluntarily paid Robinsons usurious interest and if so, how much.

Since the right of Robinsons to bring suit upon the promissory note without first exhausting their security was not an issue at trial nor raised on appeal, we make no decision concerning it, but we do direct the trial court's attention to McMillan v. United Mortgage Co., supra.

Accordingly, the orders directing a verdict for Robinsons under Rule 50(a) and dismissing Klines' counterclaims under Rules 41(b) and (c) are reversed and the matter is remanded for trial.

THOMPSON, C. J., and CRAVEN, D. J., concur.