ROBERT D. BATES AND MARY L. BATES, APPELLANTS, *v.* TROY F. CHRONISTER AND AUDREY CHRONISTER, RESPONDENTS.

No. 14759

December 7, 1984

691 P.2d 865

*Terry M. McCoy,* Reno, for Appellants.

*David Dean,* Reno, for Respondents.

# OPINION

*Per Curiam:*

This is an appeal from the trial court's ruling on cross motions for a judgment notwithstanding the verdict and from an order denying attorney's fees. On the partial record before the court, we find that the Bateses established *prima facie* error in those rulings. Since the Chronisters failed to designate any pertinent portions of the trial transcript, we reverse all of the lower court's orders and remand with instructions.

On April 3, 1980, Robert and Mary Bates agreed to sell to Troy Chronister three mobile home lots located on Pearl Avenue in Sun Valley, Nevada. The sales price on the Bates/Chronister contract was $50,000. Chronister made a down payment of $10,000, assumed a first deed of trust in the amount of approximately $26,100 and agreed to pay the balance in one-third installments as "each lot is developed and sold with mobile home on it." The promissory note Troy and Audrey Chronister executed, pursuant to the sales agreement, provided that they would pay to the Bateses "the sum of $4,621.14 upon sale or transfer of title of any one [of the three lots]." The note also provided for acceleration of all of the principal and interest due upon default and for payment of the costs of collection and attorney's fees. The note was secured by a deed of trust.

On November 17, 1980, Chronister executed a land sale contract for one of the subject parcels with Austin and Mabel Dunn. The purchase price for the lot was set at $28,000. The Dunns gave only a $10 down payment but agreed that the balance was payable at $250 each month at 17.5% interest until satisfied. Two months before they signed the sale agreement, the Dunns had purchased a mobile home and moved it onto the lot they eventually agreed to buy from Chronister.

On December 15, 1980, the Bateses made demand on the Chronisters for any and all sums due under the promissory note. The Chronisters' attorney initially responded with a letter on December 27, 1980, which admitted his clients' liability on the note but suggested two alternatives for negotiation. The Bateses rejected the proffered settlements and on May 11, 1981, proceeded to swear out a notice of default and election to sell. Less than a month later, the Dunns and *Trailer Boy Troy, Inc.* entered into an agreement for the removal of the Dunns' mobile home from the subject lot. Trailer Boy contracted to assume all related expenses of the move and the parties to the moving contract agreed that the Dunn/Chronister land sale contract was null and void. Consequently, the Chronisters refused to satisfy the promissory note.

The Chronisters commenced this litigation by filing a complaint against the Bateses and First Financial Service Corporation, the payee on the first promissory note. The complaint alleged many claims for relief including breach of contract, slander of title, nuisance, and interference with contractual relations. Both defendants answered and the Bateses counterclaimed for payment of the promissory note.[1] Following a six-day jury trial, a verdict was returned in favor of the Bateses and First Financial on the complaint and in favor of the Bateses on their counterclaim. The jury awarded the Bateses $4,621.15 in damages, with interest at 12%, plus late charges in the sum of 5% of the outstanding balance on the promissory note.

Dissatisfied with the size of the award, the Bateses filed a motion for a judgment notwithstanding the verdict (JNOV). They requested that the award be increased to the full accelerated amount of the note, $13,863.44. This request was accompanied by a motion for attorney's fees under the contract and promissory note. The Chronisters opposed both these motions and, in passing, argued that a JNOV should be granted in their favor because the Chronister/Dunn sale was never "consummated." The lower court ruled against the Bateses on both motions and granted a JNOV in the Chronisters' favor. On appeal, the Bateses challenge these orders.

### 1. *"Consummated" Sale*

In its order setting aside the jury's verdict, the lower court stated that the Dunn/Chronister contract was never enforceable because the parties to the agreement rescinded it before it was "consummated." According to the lower court, the contract was not consummated because no payment toward the purchase price had been made. The Bateses contend this ruling is incorrect because the evidence supports the jury's verdict that a "sale" had occurred and that the valid land sale contract between the Dunns and the Chronisters triggered the first installment payment due under their note. The Chronisters contend that a *consummated* sale was the condition precedent to payment under the note. No consummated sale occurred, the Chronisters argue, because neither money nor title was transferred by the land sale contract and, furthermore, the parties rescinded the contract.

> [A] motion for [JNOV] may be granted *only* when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence or there is insufficient evidence to make a "one-way" verdict proper, [JNOV] should not be

[1]The parties have not argued any of the ramifications raised by the one action rule. NRS 40.430.

awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict.

5A Moore's Federal Practice § 50.07 [2] (1984) (emphasis added). *See also* Pruett v. First Nat'l Bank, 89 Nev. 442, 514 P.2d 1186 (1973); Twardowski v. Westward Ho Motels, 86 Nev. 784, 787, 476 P.2d 946, 947 (1970). Consequently, the lower court could have properly granted a JNOV only if, without weighing the evidence, the only reasonable conclusion was that the parties intended that the installments under the promissory note fell due only when the Chronisters had received the full sale price for the lot and the Dunns had received legal title to the subject lot.

In the present case, the Bateses designated only a partial record on appeal. The record contains all of the pleadings, motions, exhibits, instructions, verdicts and orders. It does not contain a transcript of the six-day jury trial. Traditionally, when evidence on which the lower court's judgment rests is not included in the record on appeal, it is assumed that the record supports the district court's findings. Stover v. Las Vegas Int'l Country Club, 95 Nev. 66, 68, 589 P.2d 671, 672 (1979). Nevertheless, in Driscoll v. Erreguible, 87 Nev. 97, 482 P.2d 291 (1971), this court held that the appellant's failure to designate a trial transcript did not warrant dismissal of the appeal. There, the appellant established a *prima facie* showing of prejudice on the partial record before the court. Once the appellant met that burden, it fell to the respondent to designate those portions of the transcript which would support the lower court's judgment. *Id.* at 101-103, 482 P.2d at 294-295.

The contract and the promissory note included in the partial record on appeal indicate that the installments were due under the note when the lots were sold or title was transferred. In Arizona Land Title & Trust Co. v. Safeway Stores Inc., 429 P.2d 686 (Ariz.App. 1967), the Arizona court interpreted a contract which provided that the buyer's obligation to purchase the subject realty was conditioned on the "purchase" of adjacent property. The trial court was held to have erred in entering a summary judgment because a question of fact existed as to whether the parties intended the words "purchase" or "sale" to mean a consummated purchase or merely the execution of a contract for sale.[2] *Id.*

---

[2]The only Nevada authority which the parties cite as providing a definition of "sale" is Kline v. Robinson, 83 Nev. 244, 428 P.2d 190 (1967), *ovr'ld on*

at 689-690. *Cf.* Williams v. First Fed. Sav. & Loan Ass'n etc., 651 F.2d 910 (4th Cir. 1981); Century Fed. Savings & Loan Ass'n v. Van Glahn, 364 A.2d 558 (N.J. Super. Ct. Ch. Div. 1976); Annot., 60 A.L.R. 3d 713 § 10(b) (1976) (land sale contract held to "convey" realty for purposes of due on sale clause because the purchaser received an equitable title to the realty as well as immediate right to possession). Because two equally plausible interpretations arise from the contract's and the promissory note's use of the words "sale or transfer of title," the Bateses have made a *prima facie* showing on the partial record before this court that the lower court erred in setting aside the jury verdict. The burden then fell to the Chronisters to designate those portions of the trial transcript which would have supported the lower court's finding that the parties intended the installment payments to be due and payable only upon the consummated sale of each of the lots. The Chronisters, however, have failed to include those portions of the transcript which would have supported the lower court's findings.

## 2. *Rescission of the Dunn/Chronister Contract*

In its order granting a JNOV, the lower court also found that the June 1, 1981, agreement between Trailer Boy Troy, Inc. and the Dunns constituted a rescission *ab initio* of the Dunn/Chronister land sale contract. Interestingly, Chronister was not a party to the "rescission" contract. That contract was between Trailer Boy Troy, Inc. and the Dunns. For a subsequent agreement to constitute a rescission, it must be made with the *mutual* consent of the parties to the original contract. Holland v. Crummer Corp., 78 Nev. 1, 7, 368 P.2d 63, 66 (1962). One party to an executory contract, in the absence of fraud or a special reason, cannot rescind. First Nat. Bank of Julesburg v. Banking Bd., 663 P.2d 261 (Colo.App. 1983). Because the Dunn/Chronister land sale agreement was executory, the Bateses have established *prima facie* that the lower court's finding of a rescission was erroneous. The Chronisters did not designate any portion of the transcript that would have indicated fraud or special circumstances or that Trailer Boy was a mere alter ego of Chronister, that Chronister had transferred his interest in the subject properties to the corporation, or that Trailer Boy served as Chronister's agent.

---

*other grounds*, Pease v. Taylor, 88 Nev. 287, 496 P.2d 757 (1972). There, the court distinguished between a sale and a loan to determine whether the usury statute applied. The *Kline* court stated that "[a] sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest." *Id.* at 249, 428 P.2d at 194.

3. *Denial of Bateses' Motion for JNOV Increasing Jury Verdict of $4,621.15 to $13,863.44*

The jury awarded the Bateses $4,621.15 with interest at 12%, late charges at 5% of the outstanding balance on the promissory note from December 1, 1980 and all court costs. Because the promissory note contained a standard acceleration clause, the Bateses moved for a JNOV and argued that the award was inadequate. The lower court, however, denied this motion on the ground that the jury had incorrectly found that a sale occurred. Although the Bateses have challenged this decision on appeal, the Chronisters have confined their response to the sale issue.

A JNOV in an amount greater than the jury's verdict may be entered on the prevailing party's motion. The order is proper, however, only where "the evidence supporting it is uncontradicted and unimpeached so that the verdict could and should have been entered in the exact amount of the judgment." Hatchell v. McCracken, 132 S.E.2d 7 (S.C. 1963). *See also* Sunset Oil, Co. v. Vertner, 208 P.2d 906 (Wash. 1949). In the present case, the promissory note provided that the full amount due was $13,863.44. The note also stated that in the event of a default in the payment of any installment the remaining unpaid principal and interest shall be accelerated *without notice*. The Chronister/ Dunn sale occurred on November 17, 1980, the Bateses made demand upon Chronisters on December 15, 1980, and a notice of default was made on May 11, 1981. The partial record does not contain any contradictory evidence on the amount due upon acceleration of the note, nor have the Chronisters designated any portion of the transcript which would suggest a different result. In fact, an instruction given by the court (#37) informed the jury that if they found for the Bateses on their counterclaim the damages "may include: the principal amount of the promissory note . . . ." Thus, the lower court erred in denying the Bateses' motion for a JNOV regarding the accelerated balance.

4. *Interest*

The jurors had been instructed that if they found for the Bateses they could award interest on the principal amount from December 1, 1980, until the present time at the rate of 12%. The jury's verdict regarding the interest award, however, was ambiguous. It stated "interest [at] 12%." The promissory note itself did not set a rate of interest. Nevertheless, the Bateses contend that the lower court erred in denying a JNOV because NRS 99.040[3]

---

[3]NRS 99.040 (1983) provides in relevant part:

When there is no express contract in writing fixing a different rate of

provides that "the rate of interest, when not otherwise stated, will be deemed to be the legal rate of interest recognized in this state." We elect to treat the Chronisters' failure to respond to this argument in the three pages of argument in their answering brief as a confession of error.[4] A Minor v. Mineral Co. Juv. Dept., 95 Nev. 248, 592 P.2d 172 (1979); Moore v. State, 93 Nev. 645, 572 P.2d 216 (1977). *Cf.* James v. Abrams, 99 Nev. 98, 659 P.2d 296 (1983); Nationwide Ins. v. Costa, 99 Nev. 157, 659 P.2d 883 (1983); NRAP 31(c). We, of course, express no opinion regarding the merits of this issue.

### 5. *Attorney's Fees and Costs of Collection*

The lower court denied the Bateses' motion for attorney's fees because it believed this to be a close case. Nevertheless, the promissory note signed by the Chronisters provided that "[i]n the event of such a default as defined hereinabove, the undersigned agrees to pay all costs of collection and attorney fees with the payment and at the time of payment of such sum of money and/or the performance of such acts as may be required to cure such default." In support of their motion, the Bateses attached an affidavit from their counsel which stated that $13,500 in attorney's fees had been expended.

On appeal, the Bateses challenge the order denying attorney's fees by arguing that NRS 18.010(1)[5] provides that attorney's fees are governed by the parties' agreement. Because the Bateses were the prevailing party, they claim the lower court was required to award reasonable fees. The Chronisters do not respond to this issue.

---

interest, interest must be allowed at the rate of 12 percent per annum upon all money from the time it becomes due, in the following cases:

  1.   Upon contracts, express or implied, other than book accounts.

In 1980, the rate of interest provided by NRS 99.040 (1979) was eight percent.

[4]The jury awarded the Bateses a 5% late charge on the outstanding balance of the note from December 1, 1980. The Bateses contend that the denial of their motion for a JNOV was erroneous because the late charge should have been calculated from the date of the sale. The Bateses provide no authority for this proposition. Furthermore, the late charge provision in the deed of trust provided that the 5% late charge was to be computed on the *installment payment* due on the note if not paid more than 15 days after the sale. Thus, it appears that the jury erred not in the date of computation but in allowing 5% of the remaining balance instead of the installment payment. The Chronisters, however, did not raise a cross appeal. Consequently, we hold that the lower court did not err in refusing to grant a JNOV marking the date of sale as the date from which the late charges were due and payable.

[5]NRS 18.010(1) provides that:

The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.

Traditionally, the value to be placed on the services rendered by counsel lies in the exercise of sound discretion by the trier of facts. Brunzell v. Golden Gate Nat'l Bank, 85 Nev. 345, 350, 455 P.2d 31, 33 (1969). In the present case, however, the lower court did not value professional services. It determined that because the issues were close no attorney's fees were warranted under the parties' agreement. Consequently, the abuse of discretion standard is inapplicable.

In most American jurisdictions, it is the rule that provisions in contracts for the payment of attorney's fees in the event it is necessary to resort to aid of counsel for enforcement or collection are valid and enforceable. These provisions have been upheld because they are regarded as an agreement to indemnify a creditor from loss. S. Speiser, *Attorney's Fees*, § 15:3-4 (1973). Ordinarily, construction of a provision for compensation of an attorney is governed by the same rules that generally apply to all contracts. 7 Am. Jur. 2d *Attorneys at Law* § 247 (1980).

In the present case, the Bateses were the prevailing party on the jury's verdict and should have been the prevailing party on their motion for JNOV. The promissory note explicitly provided for attorney's fees in the event of a default. On the partial record before us, the Bateses have made a *prima facie* showing of error in the lower court's ruling. Again, the Chronisters failed to designate any portion of the trial transcript which would have supported the lower court's findings.

## CONCLUSION

On the partial record on appeal, the Bateses have made a *prima facie* showing that the lower court erred in finding that the parties intended that the installment payments under the note were due only upon a "consummated" sale and that the June 1, 1981, Trailer Boy/Dunn agreement constituted a rescission of the Chronister/Dunn land sale contract. Additionally, the record clearly indicates that the Bateses were entitled to the full balance of the promissory note and the Chronisters conceded under NRAP 31(c) that interest at 12% on the sum of $13,863.44 should run from December 1, 1980. Finally, the promissory note plainly states that the Bateses could collect attorney's fees upon Chronister's default.

Consequently, the lower court's orders denying the Bateses'

motion for JNOV and for attorney's fees and granting a JNOV setting aside the jury's verdict are all reversed. This case is remanded to the lower court with instructions that it enter a JNOV in the Bateses' favor in accordance with this opinion [*see* Neeley v. Martin K. Eby Construction Co., 386 U.S. 317 (1967)], and that it hold a hearing regarding the value of the Bateses' attorney's services.