**WOOD PRESERVING CORPORATION OF BALTIMORE, Inc., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9841.**

United States Court of Appeals
Fourth Circuit.

Argued May 3, 1965.

Decided June 15, 1965.

Richard W. Kiefer, Baltimore, Md. (Hooper, Kiefer & Sachs, Baltimore, Md. on brief), for appellant.

Edward I. Heilbronner, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, and Thomas J. Kenney, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and LEWIS, District Judge.

J. SPENCER BELL, Circuit Judge.

The taxpayer-appellant in this case, Wood Preserving Corporation of Baltimore, Inc. [hereinafter Wood Preserving], was unsuccessful in the district court in recovering $15,925.06 in federal income taxes and interest it paid under protest to the Commissioner of Internal Revenue for its fiscal years ending June 30, 1958, 1959, and 1960. After hearing the matter without a jury, the court below concluded that certain amounts advanced to or expended in behalf of the taxpayer between June 30, 1955, and May 11, 1956, by its sole stockholder at this time, F. Bowie Smith, did not give rise to an "indebtedness," as that word is used in section 163 of the Internal Revenue Code of 1954. The court ruled instead that these advances and expenditures [hereinafter referred to simply as advances] in reality were contributions to the taxpayer's equity capital and that the Commissioner had properly disallowed certain interest deductions which the corporation had claimed.[1]

The record reveals that the taxpayer was incorporated under the laws of Maryland on April 26, 1955, and several months thereafter began engaging in the business of treating lumber by impregnating it with chemicals under pressure. The corporation's entire initial capital was obtained by Mr. Smith's subscription of 250 shares of stock at $100.00 per share. Mr. Smith testified that he anticipated that the taxpayer would be in operation (on property leased to it by another Smith corporation, F. Bowie Smith & Son, Inc.) by October, 1955, but numerous difficulties were encountered which not only postponed for several months the start of income-generating activities but also necessitated the expenditure of almost $130,000.00 in addition to the original capital investment during the corporation's first full fiscal year. Acting in response to a request made to him at a special meeting on May 4, 1955, by the taxpayer's board of directors, Mr. Smith advanced Wood Preserving money from time to time as the circumstances demanded. Although the evidence is not completely clear, it appears that most of this money was spent to acquire machinery and equipment, to make improvements to the leased property, to purchase inventories, and to meet other initial operating costs.

The minutes of the previously referred to meeting of the taxpayer's board of directors on May 4, 1955, stated that in return for his financial assistance, Mr. Smith was to receive "6% interest on open account and up to one-half of interest on bank loans." Beginning in 1956 and until the end of 1960, payments referred to as interest were regularly credited to Mr. Smith's ledger account and made by check to him. No payments referred to as repayments on the principal of the advances were made until after the tax years currently in issue.

The taxpayer was aware in the district court that the question of the nature of the advances was a question of fact and that the burden was upon it to establish that these advances were loans rather than capital investments. Jewell Ridge Coal Corp. v. Commissioner of Internal Revenue, 318 F.2d 695, 698 (4 Cir. 1963); Gilbert v. Commissioner of Internal Revenue, 262 F.2d 512, 513 (2 Cir.), cert. denied, 359 U.S. 1002, 79 S. Ct. 1139, 3 L.Ed.2d 1030 (1959). Accordingly, it introduced considerable evidence before Judge Thomsen for the purpose of acquainting the court with the circumstances which existed at the time Mr. Smith came to the financial assistance of the taxpayer. Although counsel for the taxpayer was clearly aware that the Supreme Court had observed almost two decades before that "[t]here is no one characteristic * * * which can be said to be decisive in the determination of whether [advances like those in the present case] are risk investments * * or debts," John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 530, 66 S.Ct. 299, 304, 90 L.Ed. 278 (1946), it seems fair to say that he placed primary emphasis upon evidence which he felt demonstrated the intent of the

1. The opinion of the district court is reported at 233 F.Supp. 600 (D.Md.1964).

parties in making and receiving the advances. This court and others have observed that the real intention of those who participated in a transaction like the one currently in issue is of crucial importance in determining later what relationship their conduct gave rise to. See, e. g., Nassau Lens Co. v. Commissioner of Internal Revenue, 308 F.2d 39, 47 (2 Cir. 1962); Sarkes Tarzian, Inc. v. United States, 240 F.2d 467, 470 (7 Cir. 1957); Estate of Miller v. Commissioner of Internal Revenue, 239 F.2d 729, 734 (9 Cir. 1956); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159, 166 (6 Cir. 1956), cert. denied, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599 (1957); Rowan v. United States, 219 F.2d 51, 54 (5 Cir. 1955); Helvering v. Richmond F. & P. Ry. Co., 90 F.2d 971, 975 (4 Cir. 1937); Mason-Dixon Sand & Gravel Co. v. Commissioner of Internal Revenue, 30 P–H T.C. Memo Dec. 1478–61, 1484–61 (1961). However, as the district court observed, the real intent of the parties is not to be derived solely from their testimony, but all the relevant surrounding circumstances must be considered. Cf. Wachovia Bank & Trust Co. v. United States, 288 F.2d 750, 754–756 (4 Cir. 1961). A court is not bound by what parties say they intended if their actions were inconsistent with their words. Wilbur Security Co. v. Commissioner of Internal Revenue, 279 F.2d 657, 662 (9 Cir. 1960). After considering all the surrounding circumstances and the guidelines laid down in the authorities cited to him by counsel for both the taxpayer and the Commissioner, the district judge decided that the advances made to Wood Preserving by Mr. Smith in 1955 and 1956 were contributions to capital and not loans.

The brief filed in this court by the taxpayer's counsel and his oral argument before us have in effect invited us to substitute our appraisal of the factual evidence for that of the district court. This course of action, however, is not open to us, for even if we might have decided the case differently had we been the initial finders of fact, we are bound by the district court's factual findings unless it can be said that they are clearly erroneous.[2] On this record, we cannot say that Judge Thomsen's finding regarding the nature of Smith's advances to Wood Preserving is clearly erroneous.

While we feel it unnecessary to attempt to detail exhaustively the evidence of record which we think lends support to Judge Thomsen's conclusion that Mr. Smith's advances in this case were really capital contributions, there are certain factors which we think are worthy of comment. Like the district judge, we note that there was almost a complete absence of any formal debtor-creditor relationship between Smith and Wood Preserving.[3] No debt instruments evidenced the advances; they were recognized simply by credit entries styled "cash" and "expenditures" in a ledger account. No security whatsoever was provided by the alleged debtor, a fact which seems particularly noteworthy in view of the district court's express finding that no responsible banker or businessman would have loaned the taxpayer money as Smith did at the time the advances were made. Moreover, Mr. Smith himself testified that he only intended that Wood Preserving repay the advances if profits were earned. Thus two supposedly indispensable indicia of a creditor relationship—an obligation to repay in all events and a fixed or ascertainable debt maturity date—are absent in the instant case. In the district judge's opinion, Smith also "did not act like a creditor," for he made no effort to collect any part of the principal of the advances until after the taxable years presently in issue.[4]

2. Rule 52(a), Federal Rules of Civil Procedure.

3. The only evidence pointed to by taxpayer's counsel is the notation in the minutes of the May 4, 1955, meeting of the directors that Mr. Smith was requested to assist the taxpayer in its financial troubles and that in return for that assistance he would be paid interest.

4. While this situation is not difficult to understand, in view of the complete identity

Finally, Judge Thomsen strongly suggested that the taxpayer was undercapitalized. He called attention to the high debt-equity ratio which Wood Preserving had if the advances were considered debt,[5] although he correctly observed that there is no magic debt-equity ratio which is appropriate for all corporations in all circumstances. We think it noteworthy that Wood Preserving's entire initial capital was only sufficient to cover about one-third of the purchase price of a wood treating plant purchased on April 30, 1955. Thus, a large part of the money necessary to purchase the taxpayer's core assets and get its business under way had to come from what the taxpayer sought to treat as borrowed funds. The taxpayer's own exhibits show that in addition to his initial $25,000.00 investment, Mr. Smith poured more than $100,-000.00 into Wood Preserving between the date it was incorporated and January, 1956, just four months after the time by which he had optimistically expected the corporation to be operating. In addition Smith had another corporation which he controlled guarantee the more than $48,-000.00 in notes given by Wood Preserving for the balance due on the purchase price of the wood treatment plant. In our judgment, these financial facts effectively refute the charge by taxpayer's counsel that the district court was preoccupied with hindsight and failed to give proper weight to circumstances contemporaneous with the launching of this commercial enterprise.

Since the decision of the district court was not clearly erroneous,[6] the judgment below must be affirmed.

Affirmed.

of the alleged debtor and creditor, it does suggest that these funds were intended to be placed at the risk of the business. It should be recalled that Smith did receive periodic so-called interest payments beginning with June 30, 1956, but these payments did not accord absolutely with the authorization contained in the minutes of the board of directors' meeting on May 4, 1955. Those minutes specified that Smith was to receive, in addition to six per cent interest on the credit balance in his open ledger account, "up to one-half of interest on bank loans" which he secured in his own name in order to advance money to Wood Preserving. The district court found that although some such interest payments were made to banks which had lent Smith money, "the evidence does not tie them into Smith's borrowings from the banks or his advances to Wood Preserving." 233 F. Supp. at 606 n.8.

5. Treating the advances as loans, when the last of them was made, the debt-equity ratio was approximately 5 to 1.

6. On appeal, the taxpayer's counsel has strenuously contended that the judgment below contained an internal inconsistency because even though he held the advances in 1955 and 1956 to be capital contributions, Judge Thomsen held a $52,000.00 advance made to Wood Preserving in a similar fashion on June 30, 1960, to be a true loan. Not unexpectedly, counsel for Wood Preserving has argued that the decision on the latter advance is the correct one and that for this reason, among others, the decision regarding the nature of the earlier advances ought to be reversed. Since the propriety of the characterization given the $52,000.00 advance is not presently before us, we think it both unnecessary and unwise to comment extensively upon it. We would observe, however, that the alleged internal inconsistency argument advanced in behalf of the taxpayer could with equal logic be turned against it and support an assertion by the Government that the district judge erred in his ruling on the $52,-000.00 advance. Also there were some factual differences in the circumstances surrounding the 1955 and 1956 advances and the 1960 loan.

Nor do we think Mr. Smith's financial dealings with F. Bowie Smith & Son, Inc. control the disposition of this case. The factual differences between the advances to that corporation and those to Wood Preserving are too great for it to be said that identical tax treatment of the proceeds advanced is required.