Larry F. MOSEBACH and Elberon Elevator, Inc., Plaintiffs-Appellants,

v.

Robert C. BLYTHE, Defendant-Appellee.

No. 2–61831.

Court of Appeals of Iowa.

June 28, 1979.

Review by Supreme Court Denied Aug. 9, 1979.

William J. Koehn, Dennis D. Jerde and Steven L. Nelson, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for plaintiffs-appellants.

D. A. Elderkin and D. M. Elderkin, Cedar Rapids, for defendant-appellee.

Heard by OXBERGER, C. J., and DON-IELSON, SNELL, CARTER and JOHNSON, JJ.

SNELL, Judge.

Plaintiffs appeal from that portion of the trial court's judgment which denied them recovery against defendant. Plaintiff Mosebach and defendant Blythe, co-owners of Elberon Elevator, had agreed in writing to either sell Elberon by November 15, 1972 or, if a sale had not been effectuated by then, to discontinue operations by December 31, 1972. Mosebach and Blythe further agreed to jointly inject sufficient capital into Elberon to cover Elberon's various debts. Mosebach sought at trial to recover from Blythe a proportionate share of funds injected by him into Elberon claiming that Blythe had breached their agreement by not contributing an equal amount. The trial court found that the contract dates to sell or discontinue the business were conditions precedent; that Mosebach, who had the responsibility to discontinue the business, failed to comply with these conditions, thus rendering the remainder of the contract unenforceable; that money paid into Elberon by Mosebach was a loan; and that, because of the above findings, plaintiffs were not entitled to recovery against defendant. We affirm the trial court.

I. The scope of our review is subject to argument. Plaintiffs maintain that because the trial court received all evidence subject to objection and pursuant to consent by the parties involved, because the claims alleged in divisions II and III of plaintiffs' brief are equitable in nature, and because plaintiffs' division I is, in effect, seeking specific performance of a contract, which is an action in equity, the case was tried below in equity and appellate review is de novo. Defendant claims that because plaintiffs filed their action at law and stated at trial that the action was in both law and equity and because plaintiffs' divisions I and III are clearly legal in nature, the action was tried at law and appellate review is not de novo. The trial court was uncertain whether the action was a legal or equitable one and did not state in its conclusions how the action had been tried.

We conclude that the action was one at law. "[T]he essential character of the cause of action and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is at law or in equity . . . ." 1 C.J.S. *Actions* § 54 at 1154 (1936). Generally an action on a contract is treated as one at law. *Atlantic Veneer Corp. v. Sears,* 232 N.W.2d 499, 502 (Iowa 1975). Furthermore, where the primary right of the plaintiff arises from the nonperformance of a contract, where the remedy is monetary in nature, and where monetary damages are full and certain, remedies are usually provided by actions at law and equity has no jurisdiction. *Berry Seed Co. v. Hutchings,* 247 Iowa 417, 422, 74 N.W.2d 233, 237 (1956). If, as here, both legal and equitable relief are demanded, the action is ordinarily classified according to what appears to be its primary purpose or its controlling issue. 1 C.J.S. *Actions* § 54 at 1161–62 (1936). Plaintiffs primarily sought monetary damages for the breach of an express agreement. While plaintiffs did plead equitable issues in the alternative, the basic relief sought was legal in nature. We conclude that the action below was tried at law.

A case is reviewed as tried in the court below. *Atlantic Veneer,* 232 N.W.2d at 502; *Petersen v. City of Decorah,* 259 N.W.2d 553, 554 (Iowa Ct.App.1977). If an action at law is justified as a matter of law and is supported by substantial evidence, then the trial court's judgment will not be disturbed on appeal. *Atlantic Veneer,* 232 N.W.2d at 502; Iowa R.App.P. 14(f)(1).

II. The trial court found that times stated in the agreement were conditions precedent to the performance of the remainder of the agreement, that plaintiff Mosebach was primarily responsible for either selling the elevator by November 15, 1972 or for discontinuing the elevator's business operations by December 31, 1972, that Mosebach, after failing to sell the elevator by the prescribed date, continued to solicit business opportunities for Elberon, and that Mosebach's failure to comply with the conditions

precedent rendered the remainder of the agreement unenforceable, thus relieving Blythe of further liability with respect to the agreement itself. Plaintiffs maintain the trial court erred as a matter of law in finding that the times in the agreement constituted conditions precedent, that conditions precedent are not a proper defense in this action where the defendant failed to affirmatively plead them, that if such conditions were present in the agreement, the defendant waived them by his own failure to perform, and that defendant, by his own conduct, modified the contract terms and extended the time limits.

 Construction of a contract involves a determination of its legal effect and is always a matter of law for the court. *Owen Construction Co., Inc. v. Iowa State Department of Transportation,* 274 N.W.2d 304, 306 (Iowa 1979); *Huff v. St. Joseph's Mercy Hosp. of Dubuque Corp.,* 261 N.W.2d 695, 697 (Iowa 1978); *Connie's Construction Co., Inc. v. Fireman's Fund Insurance Co.,* 227 N.W.2d 207, 210 (Iowa 1975). A reviewing court is not bound by the trial court's determination of law. *Connie's Construction,* 227 N.W.2d at 209.

 We agree with the trial court that the establishment of dates for either the sale or discontinuance of the business constituted conditions precedent.

> Conditions precedent are . . . those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.

3A *Corbin on Contracts* § 628 at 16 (1951 & Supp.1971); *see also Galt v. Provan,* 131 Iowa 277, 279, 108 N.W. 760, 761 (1906). A determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument. *Davis & Co. v. Cobban,* 39 Iowa 392, 393 (1874). The agreement in this case states that Mosebach and Blythe "will actively endeavor to consummate a sale of Elberon . . . on or before November 15, 1972" and "[t]hat if a firm

agreement for the sale of Elberon has not been consummated on or before November 15, 1972, Blythe and Mosebach will immediately undertake the discontinuance of the business enterprise of Elberon, which discontinuance will be conducted on or before December 31, 1972." The agreement further states that "it is the intention of the parties to dispose of their interest in Elberon under the most favorable terms possible and at the earliest possible date." Once a sale had been consummated or the business discontinued, then the parties were to schedule the creditors and equally inject capital into Elberon into cover those debts. The language in the agreement firmly indicates that the sale or the discontinuance of the business by the specified dates constituted conditions precedent to the performance of the remainder of the terms of the agreement.

 We further find that substantial evidence existed to support the trial court's determination that Mosebach was the party responsible for the business concerns of Elberon and that Mosebach, in failing to sell the elevator by November 15, should have wound down the business of Elberon as provided for in the agreement. Consequently, Mosebach, to recover, must have complied with the established conditions of the agreement. Proof of performance of a condition precedent is necessary to plaintiff's cause of action. *Henschel v. Hawkeye-Security Insurance Company,* 178 N.W.2d 409, 420 (Iowa 1970). If performance is not proved or excuse or justification for delay is not established, plaintiff cannot prevail. *Id.* Plaintiff, in pleading, must generally allege its performance of any conditions precedent. *Id.;* Iowa R.Civ.P. 98. Here the most generous reading of the pleadings shows that plaintiff failed to allege compliance with the conditions of the agreement. Furthermore, evidence is conclusive that the conditions had not been satisfied. Plaintiff cannot recover on this agreement.

 III. We disagree with the plaintiff's argument that defendant Blythe waived the conditions of the agreement either by failing to sell or discontinue the business himself by the set dates or by his

words and conduct following the December 31 deadline for the discontinuance of the business. A party to a contract who is entitled to the performance of a condition precedent may waive it either expressly or by conduct indicating waiver. 17A C.J.S. *Contracts* § 491 at 690 (1963); *see also H. L. Munn Lumber Co. v. City of Ames,* 176 N.W.2d 813, 816 (Iowa 1970). Mosebach and Blythe's mutual agreement to sell or discontinue the business in no way mandated that Blythe assume business responsibilities heretofore belonging to Mosebach. It was only reasonable for Blythe to believe, without any further indications from Mosebach, that Mosebach would continue to be responsible for the elevator and that he, and not Blythe, would manage the sale or discontinuance of Elberon's business.

Although a closer question, Blythe's statement in January of 1973 indicating that he would be willing to extend the deadline for sale of the elevator to March 31, 1973 also did not constitute a waiver of the conditions in the agreement. Blythe made this statement after Mosebach had failed to sell or discontinue the business pursuant to the agreement. Because the terms of the agreement had not been met, the parties were still faced with the problem of disposing of the business. The fact that Blythe then agreed to a new selling deadline did not necessarily mean that he was waiving the unsatisfied conditions in the agreement. Rather, it could be said that he was agreeing to another selling deadline separate from the agreement itself. In the absence of stronger proof to the contrary, Blythe's acquiescence in the March selling deadline represented an agreement separate from the original one and did not constitute a waiver.

IV. Nor can it be said that Blythe's statement indicating acquiescence in a March selling deadline represented a modification of the original agreement. An executory contract may be modified by one party with the consent of the other. *Davenport. Osteopathic Hosp. Ass'n v. Hosp. Service, Inc.,* 261 Iowa 247, 253, 154 N.W.2d 153, 157 (1967). Consent to the modification may be either express or implied from acts and conduct. *Id.* A written contract

may be modified by a subsequent oral one. *DeWaay v. Muhr,* 160 N.W.2d 454, 456 (Iowa 1968). The new contract consists not only of the new terms agreed upon but of as many of the terms of the original contract as the parties have not abandoned in their modification agreement. *Id.* Whether a contract has been modified by the parties is a question of fact. *Davenport Osteopathic Hosp.,* 261 Iowa at 253, 154 N.W.2d at 157.

Here we find that no agreement existed between Mosebach and Blythe to modify the conditions specified in the original agreement. Blythe's conduct alone is insufficient to prove the existence of such an agreement. Furthermore, Blythe's words and conduct, which Mosebach relies upon to say a modification of the agreement took place, occurred after the expiration of the deadline dates specified in the original agreement. Because the conditions in that agreement had not been satisfied, Blythe was no longer liable under it. The agreement ceased to be executory and could not be modified. Mosebach cannot recover under a modification theory.

V. We further conclude that substantial evidence exists to support the trial court's finding that money invested into Elberon by Mosebach constituted a loan rather than an injection of capital pursuant to the agreement. "To loan is to let a thing to another either gratuitously or for a reward." *State v. Brandt,* 41 Iowa 593, 609–10 (1875), *overruled on other grounds State v. Swearengen,* 43 Iowa 336, 337–38 (1876). To constitute a loan, there must be a lender, a borrower, and a contract between the parties. *Id.* at 610. More specifically, a loan "is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use." *Kline v. Robinson,* 83 Nev. 244, 249, 428 P.2d 190, 194 (1967), *overruled on other grounds, Pease v. Taylor,* 88 Nev. 287, 295, 496 P.2d 757, 763 (1972); *Barnes v. Hartman,* 246 Cal.App.2d 215, 221, 54 Cal.Rptr. 514, 518 (1966). The relationship between the parties is frequently referred to as a contract. 54 C.J.S. *Loan* at 655. The true intention of those

participating in a monetary transaction is of crucial importance in determining what relationship their conduct gave rise to. *Wood Preserving Corp. of Baltimore v. United States,* 347 F.2d 117, 119 (4th Cir. 1965). The real intent of the parties is to be derived not only from the testimony of the parties, but from all relevant surrounding circumstances. *Id.* If it is the intent of the parties, a transaction will be deemed a loan regardless of form. *Kline,* 83 Nev. at 249, 428 P.2d at 194; *Barnes,* 246 Cal. App.2d at 221, 54 Cal.Rptr. at 518; 54 C.J.S. *Loan* at 655. Whether a transaction is a loan is a question of fact. *Wood Preserving,* 347 F.2d at 118. The trial court's determination of the nature of a transaction is binding unless clearly erroneous. *Id.* at 119.

In this case no formal contract was entered into between Elberon and Mosebach specifying that money transferred by Mosebach constituted a loan, but this fact is not fatal since Mosebach oversaw the financial operations of Elberon. It is not illogical in such a case to conclude that the entry of the transaction by Mosebach into Elberon's books with interest attached sufficiently constituted a loan contract. Also, if Mosebach had meant these funds to be injection of equity capital made according to the agreement, it would seem unlikely that he would have entered such advancements into Elberon's ledgers as interest bearing obligations. The fact that Mosebach received payments back also indicates that a loan had been made. The absence of concurrent interest payments is not controlling. We find that substantial evidence supports the finding that Mosebach intended his advancements of funds to be loans to Elberon. He, thus, becomes a creditor of Elberon and cannot collect payment pursuant to his written agreement with Blythe.

VI. Plaintiff Elberon's third party beneficiary argument is without merit. Even if Elberon were deemed the third party beneficiary of the Mosebach-Blythe agreement, our finding above that Blythe is not liable under the agreement due to Mosebach's failure to comply with the conditions also renders Blythe nonliable under the agreement to Elberon.

VII. Plaintiff Mosebach is, likewise, unable to collect from Blythe under the equitable doctrines of contribution, detrimental reliance or unjust enrichment. It has been said that equity will do justice where the remedy in the law is inadequate, 30 C.J.S. *Equity* § 27 at 833 (1965); *see also Pillsbury Co. v. Ward,* 250 N.W.2d 35, 39 (Iowa 1977). Equity generally will not provide relief where an adequate remedy at law existed and defendant was denied that relief for appropriate legal reasons. In this case, plaintiffs sought recovery on the basis of a written agreement. It was determined that recovery for plaintiffs was not proper under the terms of that agreement. The relationship of the parties was contractual and equity will not interfere with a decision rendered on the basis of the contract. *See Coffin v. Younker,* 196 Iowa 1021, 1026, 195 N.W. 591, 593 (1923).

The judgment of the trial court is affirmed in all respects.

AFFIRMED.