**John GERARD and Evelyn Gerard, Appellees,**

v.

**Keith PETERSON and Donna Peterson, Appellants,**

v.

**Willard MAAS, Third–Party Appellee.**

**No. 88–1741.**

Court of Appeals of Iowa.

Oct. 5, 1989.

James E. Claypool and Thomas Claypool of Claypool & Claypool, Williamsburg, for appellants.

Thomas M. Buchanan of Elwood, Elwood & Buchanan, Williamsburg, for appellees.

Ronald L. Saylor of the Saylor Law Office, Williamsburg, for third-party appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

In May of 1982, John and Evelyn Gerard put their house up for sale. They retained Willard Maas, a local realtor, to sell the property. The initial price for the home was $76,500.

Keith and Donna Peterson moved to Williamsburg, Iowa, in early 1985 and began to look for a home. They called Maas in February of 1986 and asked to look at the Gerard house. Maas showed it to them a second time in March. Maas presented a written offer and acceptance to the Gerards on behalf of the Petersons, which offered to buy the home for $52,000. At this point the house was listed at $63,000.

The Petersons, who had moved to Iowa from Missouri, had asked realtor Maas about including a loan contingency clause which would condition the contract on loan approval. He responded it wasn't necessary. The Petersons gave Maas $2,600 in earnest money which he placed in escrow. The Gerards accepted the offer in April, and a closing date of May 31, 1985, was set. The Petersons applied for a $45,000 loan with Norwest Mortgage Company and had not had a response by the closing date. Eventually Norwest denied the loan unless specific repairs were made, in which case they would loan Petersons $38,000 at nine percent.

In the middle of June 1986, Gerards offered to sell the house to the Petersons for $50,000, $2,000 less than the agreed-upon price. The Petersons applied to a Williamsburg bank, Farmers Trust and Savings, at the suggestion of Maas. Farmers approved a loan of $34,000 at twelve percent interest with a three to five year balloon clause. In response to this information, Petersons told Maas all they could afford to pay was $45,000. The Petersons did not hear from either Maas or Gerard. Rather, they were told by a loan officer at the bank they were being sued by the Gerards.

The Gerards sued the Petersons for breach of the real estate agreement. They claimed damages for loss of rent, expenses for maintenance and repair, and loss of fair market value of the property.

The Petersons denied the allegations, alleging the offer and acceptance was either mutually rescinded or a condition precedent existed which did not occur, thus, no contract. They counterclaimed for a return of the $2,600 earnest money and filed a cross-petition seeking contribution and damages. They alleged Maas breached a fiduciary duty owed to them and was negligent. They contended Maas persuaded them to omit the loan contingency clause, which was unauthorized and improper legal advice and failed to advise them to seek legal counsel.

Maas filed counterclaims seeking reimbursement for his work on the real estate transaction. The district court found the

Petersons defaulted on the offer to purchase the Gerards' home for $52,000. The court concluded Gerards were entitled to $6,000, the difference between the contract price of the home and the fair market value at the time of the breach. This amount was reduced by the $2,600 earnest money already paid by the Petersons. The Petersons were not entitled to contribution or damages from Maas. However, the Gerards were liable to Maas for the amount of his commission and out-of-pocket expenses.

Petersons appeal. We affirm with regard to the claims against Gerards, but reverse and remand on the issue of Maas's contribution.

■ This case was tried in district court as an equity action. Our scope of review is governed by how the case was tried in the district court. *Matter of Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). Therefore, our review is de novo. Iowa R.App.P. 4. The court gives weight to the fact findings of the trial court, but is not bound by them. Iowa R.App.P. 14(f)(7). *Folkers v. Southwest Leasing*, 431 N.W.2d 177, 180 (Iowa App. 1988).

The appellants raise four issues for our consideration on appeal: 1) the written agreement was subject to an oral conditions precedent which was not satisfied; 2) the agreement was mutually rescinded by both parties; 3) the plaintiffs failed to prove they were damaged; and 4) the real estate agent violated a fiduciary duty or general tort duty owed to the buyers to use reasonable care and prudent judgment.

■ I. The Petersons argue an oral condition precedent to the contract arose because: a) Maas assured them a financing contingency clause wasn't necessary "here;" b) Maas was aware they were seeking financing because he suggested the lending institutions they eventually applied to; c) as an agent of the Gerards his statement was binding upon them; and d) the only possible interpretation of Maas's statement was the clause did not have to be in writing for that particular contingency to exist.

"Conditions precedent are ... those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa App. 1979); 3A *Corbin on Contracts*, § 628 at 16 (1960); *see* 5 S. Williston, *A Treatise on the Law of Contracts*, § 666A at 141–44 (Jaeger ed. 1961). "A determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument." *Davis & Co. v. Cobban*, 39 Iowa 392, 393 (1874); *Mosebach*, 282 N.W.2d at 759. *Khabbaz v. Swartz*, 319 N.W.2d 279, 283 (Iowa 1982).

We agree with the trial court's conclusion the offer and acceptance agreement was an integrated contract which did not contain a condition precedent. There is no language in the agreement which persuades us both the buyer and seller intended the transaction be contingent on financing. Although the Petersons clearly were familiar with this type of clause, they unfortunately chose to rely on the bad advice of this realtor, and did not insist on including it in their contract. While Maas certainly was aware of the buyers' need to obtain financing, nothing in the record indicates the Gerards intended that it be a condition which must occur prior to the parties being bound.

■ II. The agreement was mutually rescinded or abandoned. The Petersons argue in the alternative the sellers rescinded the agreement when Jack Gerard offered to sell Petersons the house for $50,000—$2,000 less than originally agreed.

In *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724 (Iowa 1968), the supreme court examined the evidence required to prove rescission of a land contract by oral evidence. 91 C.J.S. Vendor & Purchaser § 124b, page 1051, states: "Proof of the rescission by parol of a contract for the sale of land, should be clear and convinc-

ing, and should be sufficient to prove that a rescission was intended by the parties, mere preponderance of parol evidence being insufficient, and the person trying to establish a parol rescission has the burden of proving it.

*Id.* at 728.

The Petersons must prove the Gerards intended to rescind the contract by clear and convincing evidence which satisfies the mind a rescission was the intent in the minds of the parties. *Id.* The record does not contain evidence which meets this clear and convincing standard.

The Petersons argue rescission occurred when Gerard offered the lower selling price. However, the Petersons' subsequent conduct does not support their contention. After Gerard offered the reduced price, Peterson talked with Norwest again to see if different terms could be arranged for a loan. When Norwest refused, Peterson applied to Farmers. These actions do not indicate Petersons were under the impression the contract had been rescinded. The evidence isn't sufficient to satisfy the minds of this court the parties intended a rescission.

III. The Gerards failed to prove any compensable damage. The appellant asserts the appellees have failed to produce evidence sufficient to prove they suffered compensable damage. They rely on the distinction between proof of the fact damages have been sustained and proof of the amount of damages. *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 288 (Iowa 1981). Appellants ask us to accept their argument that it is uncertain and speculative whether plaintiffs suffered any damage at all. *Id.* Therefore, recovery should be denied.

■ The measure of damages for the breach of a contract for the purchase of real estate is the difference between the real estate's fair market value at the time of the breach and the contract price. *Gordon v. Pfab,* 246 N.W.2d 283, 288 (Iowa 1976).

■ Although appellant asks this court to disregard the values placed on the home by two separate appraisals—$41,000 and $45,000 with repairs, we decline to do so. These appraisals were done at the request of Norwest Bank and Farmers Bank shortly after the offer and acceptance was entered into. The contract price agreed to was $52,000. The trial court concluded the value of the house at the time of the breach was $46,000 and the plaintiffs were damaged in the amount of $6,000.

■ If uncertainty is only in the amount of damages, then recovery may be obtained if there is a reasonable basis in the evidence to infer or approximate the amount. *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d at 288. We agree with the trial court there is sufficient evidence in the record to provide a reasonable basis for an approximation of the amount of damages.

IV. Appellants finally claim third-party defendant, real estate broker Willard Maas, was the agent of the buyers, and breached a fiduciary duty of loyalty and a duty to exercise reasonable care and judgment.

The trial court ruled Maas was at no time the agent of the Petersons, but was always the realtor and agent for the sellers, Gerards. Based on reasoning in *Menzel v. Morse,* 362 N.W.2d 465 (Iowa 1985), we concur. Long-established case law plainly says a broker or agent may represent both buyer and seller *only* with the knowledge and consent of both. *Id.* at 474. There is no evidence in the record to indicate either buyer or seller consented to joint representation.

■ However, we determine, in spite of the absence of an agency relationship between Maas and the Petersons, the realtor owed them a general duty not to negligently cause them harm. We conclude realtor Maas was negligent when he advised the Petersons a clause making the sale contingent on their obtaining financing was not necessary. Although the exact wording is disputed, Maas testified his response to the Petersons' question about the clause was "A very casual response on my part to the effect that it probably won't be necessary, it'll appraise out." Maas's "casual" advice

was wrong on both counts—it did not appraise out and, as this appeal evidences, it was, in fact, necessary for the buyers.

In *Menzel,* the supreme court examined the standard of skill and knowledge to be applied to a real estate agent. *Id.* at 470. It reiterated its previous adoption of Restatement (Second) of Torts, Section 299A, which applies to any person who undertakes to render service to another in the practice of his or her profession or trade.

> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

The court noted Iowa substitutes "under like circumstances" for the phrase "in similar communities." *Id.* at 471.

Thomas Livingston, an owner of a real estate agency in Williamsburg, testified he always includes a subject to financing clause in an offer to buy unless the buyers specifically request the clause not be included.

There is dispute as to when Maas suggested the Petersons talk to an attorney. However, regardless of when he made the statement, there is no dispute about the fact realtor Maas, when questioned by prospective buyers for a house he listed for sale, told them a subject to financing clause was not necessary. The Petersons relied on Maas's expertise both in the real estate field and in the general practices of the community. Their reliance on his advice has cost them $6,000. The sole task for the trial court on remand is to determine the extent of realtor Maas's contribution for the judgment entered against the Petersons.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.