**The PHONE CONNECTION, INC.,**
**Plaintiff–Appellee/Cross–**
**Appellant,**

v.

**Jerald J. HARBST, Defendant–**
**Appellant/Cross–Appellee.**

**No. 91–1539.**

Court of Appeals of Iowa.

Oct. 27, 1992.

David C. Larson of Larson Law Office, Spirit Lake, for plaintiff-appellant/cross-appellant.

Donald J. Hemphill of Hemphill Law Office, Spencer, for defendant-appellee/cross-appellee.

Considered by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

DONIELSON, Presiding Judge.

Jerald Harbst appeals and The Phone Connection cross appeals from the district court's finding that Harbst had breached a covenant not to compete found in an employment contract between the parties.

On April 14, 1989, Duane Willrett, James Jones, and Harbst signed articles of incorporation to their new business named "The Phone Connection." The three incorporators agreed they would be equal co-owners of the telephone "interconnect" business which sold, serviced, and installed res-

idential and commercial telephones and related equipment. Willrett, Jones, and Harbst all had been previously engaged in separate similar businesses before deciding to form this company.

Willrett, Jones, and Harbst met in their attorney's office on May 16, 1989. Among other business, the attorney had prepared an employment agreement between the corporation and its three shareholders. In reviewing the agreement, Harbst objected to one particular section which required each employee to devote "all" of his normal business time to the corporate business. Harbst had his own retail clothing business that had nothing to do with the telephone business. Consequently, the employment agreement was changed to require each employee to devote "substantially all" of his normal business time to the corporation's affairs.

The employment agreement also contained a covenant not to compete clause. The covenant stated, in relevant part:

> In the event Employee should leave the employment of the Employer for any reason, he agrees not to compete with Employer by engaging, directly or indirectly, and whether individually or as an officer, employee, shareholder, or in any other capacity whatsoever with any entity that engages in business that in any manner could be considered a competitor of Employer. This covenant ... is effective with respect to the State of Minnesota and Iowa. The duration of the covenant not to compete shall be five (5) years commencing on the day of termination of employment and ending five (5) years thereafter....

Harbst did not object to the restrictive covenant at this meeting. After the agreement was redrafted, Willrett and Jones signed their copies, but Harbst never signed his.

The Phone Connection began its operations in Spencer, renting space from a corporation owned in part by Harbst. The company operated in an area extending from Spencer in the southeast, to the Iowa Great Lakes area, west to Rock Rapids, Iowa, and north to Jackson and Windom, Minnesota. All three men worked for the company and were paid in accordance with the terms of the employment agreement, which was $1000 per month.

On May 9, 1990, Harbst submitted his written resignation. At about the same time, the landlord corporation from which the company was renting raised the rent and the company obtained new office space. Shortly thereafter, Harbst started his own interconnect company, Telephone Installation and Repair, Inc. Harbst moved his business into the same premises which had been previously occupied by The Phone Connection. Harbst's business competed directly with The Phone Connection.

The Phone Connection instituted these proceedings seeking damages for breach of contract and an injunction against Harbst and his business based on the restrictive covenant. By stipulation of the parties, the company's claim for damages and its torts action were reserved for a later disposition. The claim for breach of contract and for injunctive relief were tried to the district court.

The district court concluded Harbst was bound by the employment agreement. However, the court also concluded the restrictive covenant was too broad as to time and distance. Accordingly, the court reformed the covenant to be enforceable in only the Iowa and the Minnesota counties in which The Phone Connection had established its trade area, for a period of two years from May 7, 1990. Harbst could legally compete in all other parts of Iowa and Minnesota. The court found The Phone Connection failed to prove any monetary damages.

Harbst appeals. Harbst contends the trial court erred in finding the employment agreement was binding and the restrictive covenant was reasonable and enforceable. The Phone Connection cross appeals, asserting the court's modifications of the restrictive covenant were too limiting.

I. *Scope of Review.* Initially, we consider the proper scope of review. On appeal, Harbst contends the case should be reviewed de novo. The Phone Connection disputes this contention.

■ The essential character of a cause of action and the relief it seeks, as shown by the complaint, determine whether an action is at law or equity. *Harding v. Willie*, 458 N.W.2d 612, 613 (Iowa App. 1990) (citing *Mosebach v. Blythe*, 282 N.W.2d 755, 758 (Iowa App.1979)). Generally, an action on a contract is treated as one at law. *Mosebach*, 282 N.W.2d at 758. If both legal and equitable relief are demanded, the action is ordinarily classified according to what appears to be its primary purpose or its controlling issue. *Id.* Here, The Phone Connection primarily brought this action on a breach of contract claim. While the company also sought injunctive relief, we conclude the action below was tried at law.

■ Therefore, we will review for the correction of errors of law. Iowa R.App.P. 4. Findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

II. *Whether the Employment Agreement was Binding on Harbst.* Harbst contends the district court erred in finding he was bound to the employment agreement. Specifically, Harbst argues he never agreed to become bound to the terms of the employment agreement and that there was insufficient consideration to bind him to this agreement.

A. Assent to the Agreement. Harbst first argues the district court erred in finding he assented to the terms of the employment agreement. He contends his attendance at the May 16, 1989, meeting was as a director, and not as an employee. He also claims he was approached repeatedly by Willrett and Jones with requests to sign the agreement and on each occasion, he refused.

■ In order to be bound to a contract, the contracting parties must manifest mutual assent to the terms of the contract, and this assent usually is given through the offer and acceptance. *Kristerin Dev. Co. v. Granson Inv.*, 394 N.W.2d 325, 331 (Iowa 1986) (citation omitted). The parties to an unsigned agreement are obligated to abide by the agreement, when the acceptance appears from the acts of the parties. *Serv. Employees Int'l, Local 55 v. Cedar Rapids Community Sch. Dist.*, 222 N.W.2d 403, 407 (Iowa 1974). Whether such assent has been given here is to be determined *objectively*. *Kristerin*, 394 N.W.2d at 331.

■ We adopt the conclusions of the district court as our own:

It is clear that Mr. Harbst benefited from his employment by the plaintiff. He was able to pursue his own business interests and to continue his association with the Superior Telephone Company. He had steady employment, and even though his salary was relatively low, it was the same amount received by his two business associates. He had the benefit of Mr. Willrett's experience in selling interconnect services and equipment and he had an experienced technical associate in Mr. Jones. Willrett and Jones relied upon Harbst to abide by the provisions of the Employment Agreement, and under the facts of this particular case, they had every right to assume that Mr. Harbst had signed the Employment Agreement. By his actions at the meeting on May 16, 1989, Harbst agreed to become by the provisions of the Employment Agreement, as modified ... [T]he fact that [Harbst] successfully negotiated a change in the employment contract shows that he was acting both in his individual capacity as well as his corporate capacity at that meeting.

Harbst received his salary and benefits pursuant to the employment agreement. There was never any serious consideration given to hiring any other employees to whom the employment agreement might apply. Finally, the only evidence of his repeated refusals to sign the employment agreement Harbst offers is his own, self-serving, testimony.

On appeal, Harbst argues the record does not support a finding that he assented to the terms of the employment agreement. Harbst is reminded we are reviewing only for errors of law, and we are bound to the findings of fact made by the district court

if supported by substantial evidence. Iowa R.App.P. 4, 14(f)(1). As there is substantial evidence to objectively establish Harbst's assent, we find the district court did not err in finding Harbst agreed, through his conduct, to be bound to the employment agreement.

B. Consideration. Harbst also argues there was not sufficient consideration to support his being bound to the provisions of the employment agreement.

■■■ In Iowa, continued employment for an indefinite period of time provides sufficient consideration to support a covenant not to compete. *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983); *Farm Bureau Serv. Co. v. Kohls*, 203 N.W.2d 209, 212 (Iowa 1972). Harbst cited no authority to support his contention that there there was insufficient consideration. The failure to argue or to cite authority in support of an issue may be deemed waiver of that issue. Iowa R.App.P. 14(a)(5).

We hold there was sufficient consideration and affirm the district court on this issue.

III. *Enforcement of the Restrictive Covenant.* Harbst also argues the covenant not to compete is unreasonable and should not be enforced.

■■ In deciding whether to enforce a restrictive covenant, the court will apply a three-pronged test: (1) Is the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive of the employee's rights; and (3) is it prejudicial to the public interest? *Lamp v. American Prosthetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986).

■■ We find the restrictive covenant is reasonably necessary for the protection of The Phone Connection's business. Harbst was one of only three principal employees and he worked closely with the other two partners, Willrett and Jones. Prior to their association, the three had been competitors in the same market. Once the company was formed, Harbst had total access to the company books and records. Harbst also had direct personal exposure to the company's customers and supplies.

We also find the restrictive covenant, as modified by the district court, is not unreasonably restrictive of Harbst's rights. While Harbst has other vocational skills, his livelihood is tied to the telephone business. Harbst also has a large family which does not want to move. The district court concluded Harbst would be unreasonably restricted by the covenant's time and geographical limitations. The court therefore modified the covenant to apply only to the Iowa and Minnesota counties in which The Phone Connection had established its trade area. The court also reduced the time period from five to two years. With these modifications, this covenant does not pose an unnecessary or unreasonable hardship on Harbst.

Finally, we find the protective covenant is not prejudicial to the public interest. Presently, consumers in The Phone Connection's trade area could be served by several other telephone interconnect companies already in existence. A prohibition on Harbst's competition in the trade area would not adversely affect the public interest.

IV. *District Court's Modification of the Restrictive Covenant.* In its cross appeal, The Phone Connection argues the district court's modifications of the restrictive covenant were too limiting and did not provide the company with sufficient protection.

■■ Covenants not to compete are unreasonably restrictive unless they are tightly limited as both time and area. *Pathology Consultants v. Gratton*, 343 N.W.2d 428, 434 (Iowa 1984); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 373–74 (Iowa 1971). Where the court finds a covenant unduly restrictive, the court has the authority to modify that covenant. *Ehlers*, 188 N.W.2d at 374. In *Rasmussen Heating & Cooling, Inc. v. Idso*, 463 N.W.2d 703, 705 (Iowa App.1990), the court of appeals found, in an examination of recent Iowa cases, the duration of a restrictive covenant typically ranges from two to three years. Restrictive employment cove-

nants beyond five years have not been enforced. *Id.*

Here, the district court modified the covenant by restricting the geographical territory to those areas in which The Phone Connection had established its business and by decreasing the five year prohibition to two years. We find neither of these restrictions are too limiting because of the reasons set forth earlier in this opinion. The restrictive covenant, as modified, still protects The Phone Connection's central geographical areas of business for a significant amount of time, two years. Because of the hardship imposed upon Harbst and the nature of the business in issue, we affirm the district court's modification of the covenant in its entirety.

Therefore, we find the restrictive covenant, as modified by the district court, is both reasonable and enforceable. We determine any other issues the parties may have raised are either covered by this opinion or are without merit.

The costs of this appeal are taxed to Harbst.

For all the reasons stated, we affirm the district court.

AFFIRMED.