**BURTON E. TRACY & CO., P.C., Appellee,**

v.

**Bruce D. FRINK, Appellant.**

**No. 92–1637.**

Court of Appeals of Iowa.

May 26, 1994.

Christopher F. O'Donohoe and Darin Neely of O'Donohoe, O'Connor, O'Donohoe & Stochi, New Hampton, for appellant.

Lee E. Poppen of Knoshaug & Poppen Law Firm, Clarion, for appellee.

Considered by HAYDEN, P.J., and HUITINK, J., and KEEFE, S.J.*

KEEFE, Senior Judge.

Burton E. Tracy is a CPA practicing in Clarion, Wright County, Iowa, since October 1, 1964. In 1972, Gary Horton, also a CPA, joined him in practice. In 1973, they incorporated as Burton E. Tracy & Co., P.C. (hereafter called Tracy). Bruce D. Frink, also a CPA, joined Tracy as an employee in 1979. He became a stockholder in 1981.

On December 14, 1983, the three stockholders, Mr. Tracy, Mr. Horton, and Mr. Frink, signed a buy-sell agreement to cover the event of a stockholder leaving the company. All three helped in the development of the agreement and agreed as to its provisions. All three were treated equally, including in the terms of the covenant not to compete. It stated as follows:

### Covenant Not to Compete

In the event a stockholder continues to serve clients in any of the three years following withdrawal or dismissal for cause or voluntary retirement and retains any clients of the corporation, he shall purchase such account for an amount equal to 100% of the corporation's fiscal year proceeds received from the client for the previous year with said amount being applied against any amounts the corporation owes the partner stockholder.

When Frink joined the corporation in 1979, he brought no clients with him. At that time, the corporation had five school districts as clients. When the buy and sell agreement was signed, it had forty-nine school districts. When Frink departed, the corporation had 107 school districts throughout the State of Iowa. When Frink joined the corporation, he had some experience in government audits, but none in school district audits. He learned the procedure for bidding on school district audits while an employee and stockholder of Tracy.

On November 1, 1990, Frink withdrew from the corporation and opened a competing office in Clarion. A number of Tracy's clients chose to follow Frink in his new office.

Tracy sued Frink for violation of the covenant not to compete. Frink defended on the claim that the school districts were not covered by the covenant and, by agreement, the parties tried the issue of the handling of the proceeds due under the stock repurchase agreement. $34,498.00 was the general amount due Frink at the time of trial.

On appeal, Frink has made a direct attack on the covenant as a violation of Iowa law against restrictive covenants. This will be discussed later in this opinion.

At trial, Frink admitted he owed Tracy $35,299.25 for former Tracy clients who were not school districts. He denied the school

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

districts were clients covered by the covenant because Iowa law requires an annual audit procedure under chapter 11 (Iowa Code § 11.6). He did not attack the validity of the covenant. In the answer pursuant to Tracy's request for admissions, Frink admitted the covenant was effective for three years following withdrawal of a stockholder from the corporation.

The district court, after trial, enforced the covenant not to compete. It awarded Tracy $64,774.25 less the amount currently owed Frink on the share buyout, or $6,554.62, for a net judgment of $58,219.64.

■ The first matter to be determined by this court is the scope of its review. Appellant's brief is mainly concerned with the enforcement of the covenant. However, in the lower court, the trial was solely on the application of the covenant to the clients in question. There is no pleading pertaining to the validity of the covenant in issue. The trial court, in its conclusions, stated "the defendant [Frink] does not object to the validity of the covenant not to compete."

Frink admitted he owed $35,299.25 under the terms of the covenant. He cannot now attack the covenant as a basis for appeal on a legal point. In *Shell v. Careage Corp.,* 353 N.W.2d 416, 420 (Iowa 1984), the Iowa Supreme Court said, "It is a basic rule of appellate procedure that questions not presented to and not passed on by the trial court cannot be raised or reviewed on appeal." "The theory under which a case was tried in the trial court will be the theory upon which an appeal is based." *Cole v. City of Osceola,* 179 N.W.2d 524, 527 (Iowa 1970). The legality of the covenant will not be considered by this court.

■ Therefore, the first question to be determined is: was the trial court correct in including school districts in its judgment for Tracy? Under Iowa law, a school district is required to seek bids for its yearly audit. Frink argues this releases all of Tracy's school clients to competition from other CPAs.

In its findings of fact, the trial court held that the contested school district charge should be included in the judgment for Tracy.

■ The essential character of a cause of action is the relief it seeks, as shown by the complaint. This determines if it is at law or equity. Generally, an action of contract is at law. It was tried as a law action by the trial court. Therefore, we will review for the corrections of errors of law. Iowa R.App.P. 4. Findings of fact are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Mosebach v. Blythe,* 282 N.W.2d 755 (Iowa App.1979), *The Phone Connection, Inc. v. Harbst,* 494 N.W.2d 445 (Iowa App.1992).

The testimony discloses that Frink obtained his expert knowledge of school district audits while a stockholder and employee of Tracy. In a letter to Tracy clients, Frink stated if he became their auditor he would be available throughout the year to provide assistance for problems that may arise. A competitor of both parties testified that an auditor-client relationship did not terminate until one party notified the other of its end. The trial court's factual determination that Frink owed Tracy $29,475.00 for school audits is supported by substantial evidence and must be upheld.

■ The final issue to be determined is how to handle the various amounts owed between the parties. It was agreed that Tracy owes Frink $35,498.00 for his stock repurchase fee. The buy and sell agreement provided for annual 10% payment after withdrawal. At the time of trial, Frink had not received payments due March 1, 1991, and March 1, 1992, or a total of $6,554.62. He argues the whole of his repurchase still owing should be offset against the judgment for Tracy. The trial court allowed only two payments then due as an offset.

At the time the buy and sell agreement was signed on December 14, 1983, Frink had been an employee and was a stockholder. It was a voluntary agreement, he had input, and each stockholder was treated equally. The evidence does not support his claim that he was a casual participant and signed the agreement without full knowledge. It was

an agreement of a professional corporation prepared and executed by professionals.

The purpose of the stock repurchase agreement is clear. First, it gives the withdrawing stockholder protection for the value of his stock, and second, it protects the corporation by giving it ten years to pay off the amount due. The purpose of the agreement was to protect the cash flow of the corporation from a stockholder who withdraws. Nothing could be clearer in this agreement. If we allow Frink to offset his judgment as requested, we would violate the clear purpose of the agreement. Again, there is substantial evidence to support the trial court's decision on this point, and it is binding on this court.

All issues raised have been considered, and the judgment of the trial court is affirmed. Costs are charged to the defendant.

**AFFIRMED.**