**IN THE COURT OF APPEALS OF IOWA**

No. 24-0928
Filed December 4, 2024

**IN RE THE MARRIAGE OF NICOLE L. YOUNG**
**AND MATTHEW J. YOUNG**

**Upon the Petition of**
**NICOLE L. YOUNG, n/k/a NICOLE L. MONSON,**
    Petitioner-Appellant,

**And Concerning**
**MATTHEW J. YOUNG,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,

Judge.

Nicole Monson appeals the district court's dismissal of her petition to modify

the child custody provisions of the decree dissolving her marriage to Matthew

Young. **AFFIRMED.**

Eric S. Mail and Eric D. Puryear of Puryear Law P.C., Davenport, for

appellant.

Michael J. McCarthy of McCarthy, Lammers & Hines, LLP, Bettendorf, for

appellee.

Heard by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Nicole Monson appeals the district court's dismissal of her petition to modify the child custody provisions of the decree dissolving her marriage to Matthew Young. She argues the district court erred by (1) excluding and refusing to consider evidence arising prior to the entry of the decree; and (2) dismissing her petition despite sufficient evidence of a substantial change in circumstances.

After our review of the record, we affirm the district court's dismissal of Monson's petition for modification.

## I. Background Facts and Procedural Posture.

Nicole and Matthew were married in 2014. Their relationship produced one daughter, C.Y., born in 2017. Nicole petitioned for dissolution of marriage in March 2021. The district court set a trial date for April 14, 2022. But on April 14, Nicole and Matthew entered into a settlement agreement resolving contested custody issues. The settlement agreement was read into the record and verbally approved by the district court. The agreement provided Nicole and Matthew would have joint legal custody and physical care of C.Y. Additionally, the agreement provided that Matthew would pay Nicole child support and maintain health insurance for C.Y. The agreement did not set the amount of child support. However, a subsequent district court order set Matthew's child support obligation at $111.38 per month.

After the settlement agreement was verbally approved by the district court, counsel for Nicole was directed to draft "the decree" and submit it to the district court. However, for reasons that are not clear from the record, a draft of the settlement agreement was not submitted to the district court until August 5. The district court held a hearing to review the drafted settlement agreement on August

10, during which it approved the agreement and "incorporated [it] as this court's decree of dissolution of marriage."

Prior to the district court's adoption of the settlement agreement, Matthew was arrested for his alleged involvement in a domestic abuse incident with his new girlfriend in June 2022.[1]  After learning of this incident, Nicole filed an emergency *ex parte* application for a writ of injunction on June 9.  In her application, Nicole requested that the district court order C.Y. to remain in her care.  Nicole also requested that Matthew only be allowed supervised visitation with C.Y.  According to the allegations in Nicole's application, Matthew viciously assaulted his new girlfriend by pinning her to the floor and strangling her to the point of losing consciousness.  Nicole also alleged Matthew threatened to kill his girlfriend and her children.  C.Y. was allegedly present during this incident.  The district court denied Nicole's application, finding the requirements necessary to issue an emergency *ex parte* injunction had not been met.

A few months after the district court entered the dissolution decree, Nicole filed a petition to modify its custody, visitation, and child support provisions.  As the basis for her petition, Nicole asserted the domestic abuse incident between Matthew and his girlfriend caused her to fear for the safety and emotional well-being of C.Y. while she is in Matthew's care.  Additionally, Nicole asserted "[Matthew] has engaged in a course of conduct harmful to the minor child."  In her

---

[1] From our reading of the record, the alleged domestic abuse appears to have occurred in Illinois.  Charges were brought against Matthew in Illinois, but he was subsequently acquitted.

petition, Nicole asked the court to grant her physical care. Nicole later amended her petition, requesting the district court grant her sole legal custody.

On May 21, 2023, the district court held a combined trial for Nicole's petition for modification and contempt action.[2] Nicole first called Cathy Veach—Matthew's mother—as a witness. During direct examination of Veach, Nicole's counsel attempted to question her about the alleged domestic abuse committed by Matthew in June 2022. The following exchange then took place:

> [Counsel for Matthew]: Your Honor, I'm going to object to this line of questioning concerning the June 5th, 2022, incident which predated the date of the entry of the decree and is irrelevant to a substantial change in circumstances.
> The Court: I would sustain that objection. The decree was entered on August 10th. I note the stipulation I think was filed on August 5th, so we're looking at August 5th and forward.
> [Counsel for Nicole]: If it pleases the Court, if I can respond to that objection. One of the issues that's been present in this case has been a pattern of violence submitted by Mr. Young both before and after various dates in this case. And when the Court is looking at what is likely to continue in the future, those past issues are still probative for that, even if they don't serve as the actual basis itself.
> The Court: And I disagree with that. So we're going to focus on August 5th—I'll give you August 5th of 2022 and forward.

Shortly after the objection was sustained, the district court permitted Nicole's counsel to make an offer of proof concerning the alleged domestic abuse incident of June 2022. During the offer of proof Veach stated, "I know that they were next door with their neighbors, and there was a little bit—there was some drinking and [Matthew's girlfriend] was asked to leave, and she didn't want to leave. She was

---

[2] Nicole also filed two applications for rule to show cause. The first application alleged Matthew failed to maintain medical insurance for C.Y. pursuant to the terms of the dissolution decree. This dispute was settled by the parties. The second application alleged Matthew frequently failed to make his child support payments on time and in the full amounts.

trying to get back into his house. That's the story I heard." Veach denied any knowledge of Matthew punching or strangling his girlfriend. When asked why Matthew was arrested for involvement in the incident in June 2022, Veach replied:

> The police didn't—they acted like they had to do it, but not—they told me not to worry. They said, [d]on't worry. We have to do this because she's being upset. And so I took the child. The child was next door with the neighbors and I'm not sure when she went there . . . .

After Veach finished testifying, Nicole's counsel attempted to call Matthew's girlfriend to testify. However, before Matthew's girlfriend was called as a witness, the following exchange occurred:

> The Court: Well, let's see. Is all the information related to [Matthew's girlfriend] pre-decree?
> [Counsel for Nicole]: It is post-trial and settlement date prejudgment entering decree date.
> The Court: Then I'm going to make the same ruling. You can make an offer of proof, if you want to. I would give you latitude to do a professional statement since you've articulated that she has some anxiety about being in here. Or we can have everybody excused and you can make an offer of proof on the record, if you want to, but I agree with counsel that the date of the decree is when it was entered. If you had a trial in April and the judge entered the decree in August, that would be the date of the decree. So information prior to that is not relevant. The case law is very clear on that with a modification. So, however you want to handle it as far as an offer of proof goes, but I'm certainly not going to consider evidence that happened before the decree was entered in a modification.

During the ensuing offer of proof, Matthew's girlfriend testified as follows:

> Okay. There was a birthday party next door and he was drinking a lot. And [C.Y.] was there because it was like a kid's birthday party, and I ended up having to watch her quite a bit. I went back to his house because I wasn't feeling well. It was really warm that day, and I had a few glasses of sangria. And so I went to bed for a little bit and I got sick. And that's when we started having a fight and he became very aggressive. And I was trying to leave with my things that I had brought and he was preventing me from leaving with them. And the last time I tried to pull my items away, he took them on the counter and then he pushed me on to the ground. And at that point

before I could get back up, he pinned me down on my arms and legs with his arms and legs. And then he started to strangle me. And I was trying to scream and I couldn't. And I almost started to black out and he was laughing. And then he stood up and I told him I was going to tell you everything that happened. And he laughed and threatened to kill me and my kids.

Following this offer of proof, Nicole called Mackenzie Jones to testify. Jones has been C.Y.'s therapist since July 2022. Jones stated her concerns regarding Matthew's ability to care for C.Y. "surround the history of domestic violence in the home that has been reported to me by [C.Y.]." When asked what C.Y. had told her about Matthew's alleged history of domestic abuse, Jones stated, "[she] shared that she witnessed Dad and a friend attacking each other. And then she described that this has happened again in the past and that she sometimes gets—she puts her body in between them and she kind of, you know, showed me what she did." On cross-examination, Jones disclosed she reported C.Y.'s allegations. But she admitted, "[t]he report that I made was unfounded."

Nicole testified last at the trial. During direct examination, her counsel asked her, "[d]id events occur that caused you significant concern between the date that we settled the case, read it into the record and had it verbally approved by the judge, and then the judge formally entering a decree?" Opposing counsel objected:

> [Counsel for Matthew]: Objection. It's irrelevant as to the date of the settlement discussion leading up to the decree.
> [Counsel for Nicole]: We reached settlement in this courtroom. It was read into the record. It was verbally approved by the judge, and I can ask her whether that occurred or not.
> [Counsel for Matthew]: I believe the only thing that's relevant, Your Honor, is the date of the decree. I believe that's been the ruling of the Court so far.
> The Court: It is the ruling of the Court. I will allow counsel to ask the question of did something happen that gave you cause for

concern, but, counsel, we're not getting into—between April 14th and August 5th is still pre-decree, okay. And so August 5th, 2022 and forward is what's relevant for my consideration as to whether or not there's been a substantial change in circumstances.

The district court then permitted Nicole's counsel to make another offer of proof concerning the alleged domestic abuse incident in June 2022. After the offer proof concluded, Nicole resumed her testimony. Nicole disclosed that she has experienced difficulties with Matthew during drop-offs. She described one incident during a drop-off of C.Y. in which Matthew placed his hands on her vehicle and yelled at her as she and C.Y. drove away. She also indicated she has repeatedly tried to set boundaries for communication with Matthew, but that such attempts have been unsuccessful.

After Nicole rested, Matthew moved to dismiss the petition for modification and the contempt action. The district court granted those motions. The district court explained its reasoning for the dismissal of the petition for modification by stating, "I'm not seeing a preponderance of the evidence that there's been some big permanent substantial change in circumstances that leads me to believe that we need to change the decree." The district court further continued, "[a]nd as far the contempt, I'm not seeing beyond a reasonable doubt . . . that there was a willful violation."[3]

Nicole now appeals.

---

[3] In her brief, Nicole also argues the district court erred in dismissing her contempt action. But she fails to cite any authority or expand on this argument. Thus, we find this issue has been waived. *See* Iowa R. App. P. 6.903(2)(a)(8); *see also Phone Connection, Inc. v. Harbst*, 494 N.W.2d 445, 449 (Iowa Ct. App. 1992) (noting failure to argue or to cite authority in support of an issue may be deemed waiver of that issue).

## II.  Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity."  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  Accordingly, our review is de novo.  *Id.*; Iowa R. App. P. 6.907.  "In a de novo review the appellate court makes findings of fact anew; however, when considering the credibility of witnesses the court gives weight to the findings of the trial court, but is not bound by them."  *In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989).

A district court's decision to exclude or admit evidence is reviewed for an abuse of discretion.  *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017).

## III.  Analysis

### A. Exclusion of Evidence Prior to Entry of Decree

The first error Nicole assigns to the district court is that it improperly excluded evidence of Matthew's alleged domestic abuse of his girlfriend in June 2022.  Because this incident occurred prior to the entry of the decree, the district court found it was irrelevant for purposes of assessing whether a substantial change in circumstances had occurred on a petition for modification.  Nicole claims the district court erred in making such a ruling because Iowa case law permits district courts to consider pre-decree evidence in limited circumstances.  We disagree with Nicole's argument for the following reasons.

The parent seeking modification bears the burden of proving by a preponderance of the evidence that(1) "conditions *since* the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change"; and (2) they have the "ability to

minister more effectively to the children's well being." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (emphasis added).

The case law is clear that our district courts generally must only consider circumstances *since* the entry of a decree on a petition for modification. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (noting a party seeking a modification of a dissolution decree's custody provisions must demonstrate a "substantial change in circumstances after the decree was entered."); *see also In re Marriage of Jones*, 653 N.W.2d 589, 594 (Iowa 2002) ("The decree, not the stipulation, determines what rights the parties have."). Nicole does not dispute that this is an accurate statement of the law. The alleged domestic abuse incident involving Matthew and his girlfriend occurred in early June 2022—nearly two months before the dissolution decree was entered by the district court.[4] Thus, evidence of Matthew's alleged involvement in a domestic abuse incident with his girlfriend in June 2022 was not relevant in determining whether a substantial change in circumstances had occurred *since* the entry of the decree. *See In re*

---

[4] We note Nicole argues she could not have resisted the settlement agreement based on Matthew's alleged domestic abuse in June 2022 because the parties had entered into an enforceable settlement agreement in April 2022. She argues that if she attempted to bring to the district court's attention the allegations of Matthew's domestic abuse, she would have been met with a motion to enforce filed by Matthew. We find this argument unconvincing. Generally, we agree that a party to a settlement agreement has no legal right to repudiate it. *In re Marriage of Briddle*, 756 N.W.2d 35, 40 (Iowa 2008). "Such stipulations are entitled 'to all of the sanctity of an ordinary contract if supported by legal consideration.'" *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996) (citation omitted). However, district courts are only to enforce a settlement agreement in dissolution cases involving custody of children if the "district court determines the settlement will not adversely affect the best interests of the parties' children." *In re Marriage of Handeland*, 564 N.W.2d 445, 446 (Iowa Ct. App. 1997). Nicole's argument on this point prematurely assumes she would not have succeeded in resisting enforcement of the settlement agreement.

*Ziegler*, No. 05-9011, 2006 WL 623685, at *3 (Iowa Ct. App. Mar. 15, 2006) (noting a father's pre-decree behavior was not relevant to establishing a substantial change in circumstances).

While Iowa case law does establish an exception to the general rule of considering only evidence post-entry of the decree for a petition for modification, the requirements of that exception have not been met here. In *Mears v. Mears* our supreme court stated:

> [I]f the parties knew of some fact at time of original decree or at time of a subsequent intervening proceeding which considered modification of child support provisions of such decree but the decretal court did not know of such fact, and this fact is being now advanced as a basis for modification, then that fact, if sufficient to cause a subsequent material change in circumstances, would be grounds for a modification.

213 N.W.2d 511, 515 (Iowa 1973). Thus, two requirements must be met before this exception can be applied. First, the decretal court must not have known of the fact at the time the original decree was entered. Second, the fact must be sufficient to cause a material change in circumstances. Neither requirement has been met here.

The record establishes the district court was aware of the domestic abuse allegations concerning Matthew. Nicole filed an emergency *ex parte* injunction application which included graphic details of the abuse Matthew allegedly perpetrated on his new girlfriend. That application was filed almost immediately after the alleged domestic abuse incident occurred, which was nearly two months prior to the entry of the decree. The district court considered the application for the *ex parte* injunction and denied it because it found the requirements for an injunction had not been met. From this, we find the allegations of Matthew's

alleged domestic abuse were well within the district court's knowledge at the time the decree was entered. *See in re Marriage of Freiberg*, No. 19-0092, 2020 WL 109589, at *4 (Iowa Ct. App. Jan. 9, 2020) (noting that the fact a court did not mention a fact does not mean the court was unaware of it).

Additionally, based on the limited record before us, we find the alleged domestic abuse committed by Matthew is not sufficient to cause a substantial change in circumstances. Domestic abuse is clearly an issue that can harmfully impact a child in myriad ways. In no way do we minimize the evils of domestic abuse. But even when viewing the evidence in the light most favorable to Nicole, Matthew's alleged domestic abuse appears to be an isolated incident allegedly perpetrated against somebody other than Nicole herself. The Court uses the word "allegedly" intentionally. Matthew was acquitted. Even so, we have previously held that an isolated domestic abuse incident involving a father and his new girlfriend does not amount to a substantial change in circumstance sufficient to modify a decree. *See In re Marriage of Cohrs*, No. 03-0442, 2004 WL 433800, at *2 (Iowa Ct. App. Mar. 10, 2004) ("We agree with the district court that the domestic abuse shown by the evidence consisted of isolated incidents insufficient to demonstrate a substantial change in circumstances.").

While we are troubled by Jones's testimony that C.Y. reported to her witnessing violence committed by Matthew and that she attempted to intervene, Jones admitted she reported C.Y.'s allegations and they were determined to be

unfounded.[5]  From the record, domestic abuse does not appear to be a pattern of behavior by Matthew.  *See In re Marriage of Walters,* 575 N.W.2d 739, 741 (Iowa 1998) (noting a substantial change in circumstances must be "permanent or continuous").

Lastly, we note our case law has strongly encouraged district courts in equity actions to receive evidence subject to objections.  *See In re Marriage of Anderson,* 509 N.W.2d 138, 142 (Iowa Ct. App. 1993) ("The trial court should have received objections to evidence but not ruled on the objections and allowed the evidence in the record.").  And we strongly encourage our district courts to continue to follow this approach.  But a decision by a district court to exclude evidence in an equity action does not automatically amount to an abuse of discretion. *See Kellen v. Pottebaum*, No. 18-1034, 2019 WL 2371924, at *3 (Iowa Ct. App. June 5, 2019) (finding district court did not abuse its discretion by excluding evidence in equity action).  Accordingly, we find no abuse of discretion in the district court's decision to exclude evidence of Matthew's alleged domestic abuse incident with his girlfriend in June 2022.

### B. Substantial Change in Circumstances

Nicole next argues that, even if the district court properly excluded evidence concerning the alleged domestic abuse committed by Matthew in June 2022, there "were sufficient facts to show a substantial change in circumstances since the entry of the decree to justify modification."  Nicole points to the testimony of Jones, in

---

[5] We also note that Matthew's girlfriend testified during an offer of proof that C.Y. was in the living room of the home while the alleged abuse occurred.  But she could not confirm whether C.Y. witnessed the alleged domestic abuse.

which she testified C.Y. had reported to her witnessing violence committed by Matthew on a "friend." Nicole also highlights Jones's testimony that witnessing violence can be especially harmful for children. Thus, she argues the district court erred in dismissing her petition. We disagree.

As we previously stated, a party seeking to modify the child custody provisions of a dissolution decree must show by a preponderance of the evidence that (1) conditions since entry of the decree have so materially and substantially changed that it is in the child's best interest to make the requested change; and (2) she has the ability to minister more effectively to the child's wellbeing. *Federici*, 338 N.W.2d at 158. "[O]nce custody of children has been fixed it should be disturbed only for the most cogent reasons." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). "These principles clearly place a heavy burden on a parent requesting a modification." *Id.* "Our primary consideration is not what is best for the parents but rather 'what is best for the child.'" *In re Marriage of Kisting*, 6 N.W.3d 326, 332 (Iowa Ct. App. 2024) (citation omitted).

Applying these principles, we cannot find Nicole has established a substantial change in circumstances warranting a modification of the child custody provisions of the decree. While Nicole points out Jones—C.Y.'s therapist—testified that C.Y. told her she had previously witnessed Matthew attacking a "friend," Jones later admitted she reported C.Y.'s allegations and that such allegations were unfounded. Unsubstantiated allegations are not sufficient to establish a substantial change in circumstances. *See In re Marriage of Nicholson*, No. 10-0909, 2011 WL 414997, at *3 (Iowa Ct. App. Feb. 9, 2011) (finding

unfounded allegation made by the father that the child's mother abused the child was insufficient to establish a substantial change in circumstances).

Additionally, we find Nicole did not meet her burden to prove she can minister more effectively to the wellbeing of C.Y. The evidence Nicole presented at trial almost exclusively focused on the alleged domestic abuse committed by Matthew. Nicole presented scant evidence to establish she possesses the ability to minister more effectively to the child's needs. *In re Marriage of Dore*, No. 19-0478, 2019 WL 4297881, at *3 (Iowa Ct. App. Sep. 11, 2019) (denying a father's petition for modification because he did not produce evidence establishing he had the ability to better minister to the wellbeing of the child).

Because Nicole did not sufficiently establish a substantial change in circumstances and that she possesses the superior ability to minister to the needs of the child, we conclude the district court properly dismissed her petition.

### C. Appellate Attorney Fees

Finally, Matthew requests that we award him appellate attorney fees. Appellate attorney fees are awarded upon the sound discretion of this court and are not a matter of right. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When we analyze whether to exercise this discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (citation omitted). After considering these factors, we decline to award Matthew appellate attorney fees.

**IV. Conclusion**

In sum, we affirm the district court's dismissal of Nicole's petition for modification to the child custody provisions of the dissolution decree, finding (1) the district court did abuse its discretion in excluding pre-decree evidence; and (2) the district court properly dismissed her petition because she failed to establish a substantial change in circumstances and that she could minister more effectively to the child's needs.  Lastly, we decline Matthew's request for appellate attorney fees.

**AFFIRMED.**